**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-311-DLB**

**LOVEMANI SINGH** **PETITIONER**

**v.** **MEMORANDUM ORDER**

**WARDEN, et al.** **RESPONDENTS**

* * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on Petitioner Lovemani Singh's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. # 1). Respondents[1] having filed a Status Report (Doc. # 3) and Response[2] (Doc. # 6), and Singh having filed his Reply (Doc. # 9), the Petition is ripe for the Court's review. For the following reasons, Singh's Petition is **granted.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Lovemani Singh is a citizen and native of India. (Doc. # 1 ¶ 2). He entered the United States without inspection on or about June 23, 2023 near San Luis,

---

[1] Petitioner files this action against Samuel Olson, Chicago Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security; Todd Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States (collectively, the "Federal Respondents"); and the Warden of the Campbell County Detention Center. (Doc. # 1 ¶¶ 13–19).

[2] Respondent James Daley filed a Response to Singh's Petition, arguing that he lacks the ability to grant Petitioner's requested relief and that Petitioner has failed to show that Daley infringed on his rights. (Doc. # 6).

Arizona. (*Id*. ¶ 30; *see also* Doc. # 3-1). He was served with a Notice and Order of Expedited Removal the next day, but the Order was never executed. (Doc. # 3-1). Nearly a month after entry, on July 15, 2023, Singh was served with a Notice to Appear before an Immigration Judge ("IJ"). (Doc. # 1-1). Nine days later, he was granted conditional parole pursuant to Section 212(d)(5) of the Immigration and Nationality Act ("INA") and was subsequently released into the interior. (Doc. # 1-8 at 9). Singh subsequently applied for asylum with United States Citizenship and Immigration Services ("USCIS"). (Doc. # 1-2).

Singh was arrested on June 17, 2026 in Brazil, Indiana. (Doc. # 1 ¶ 33). He was issued a second Notice to Appear, where he was designated "an alien present in the United States who has not been admitted or paroled," and his parole was terminated. (Doc. # 1-3 at 4; Doc. # 1-8 at 9). He was subsequently transferred to the Campbell County Detention Center in Newport, Kentucky, where he remains detained to date. (Doc. # 1 ¶¶ 34, 37). Singh requested bond, which was denied on July 16, 2026, with the IJ finding that Singh was a flight risk. (Doc. # 3-2).

On July 23, 2026, Singh filed in the instant Petition for Writ of Habeas Corpus. (Doc. # 1). In his Petition, he claims he is being deprived of his liberty without lawful basis or permissible justification and requests this Court order his immediate release or, alternatively, a constitutionally adequate bond hearing. (*Id*. ¶¶ 52, 71, 83). On July 27, 2026, the Court ordered Respondents to consider the effect of the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) on Singh's claims. (Doc. # 2). On August 4, 2026, Federal Respondents filed a Status Report, stating that *Lopez-Campos* did not apply to Singh's case because he had already received a bond hearing.

(Doc. # 3). Federal Respondents did not file any further Response. Singh filed a Reply on August 25, 2026. (Doc. # 9). Accordingly, the matter is ripe for the Court's review.

## III. ANALYSIS

Singh's Petition alleges that his present detention deprives him of his right to due process under the Fifth Amendment and violates the INA. (Doc. # 1 ¶ 52, 71, 83). Specifically, Singh contends that his detention is unlawful, and therefore requests that this Court order his immediate release. (*Id*. at 22). Alternatively, if this Court does not find release appropriate, Singh requests he be granted a constitutionally adequate bond hearing where the government bears the burden of proving his continued detention is necessary. (*Id*.).

### A. Relevant Framework

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos et al. v. Raycraft et al.*, wherein it determined that § 1226 is the properly applied statutory provision for detaining noncitizens like Singh who are not "seeking admission" into the United States. 175 F.4th 713 (6th Cir. 2026). In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225. *Id*. at 725. Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject long-term law-abiding residents in the United States. . . to the hardship of mandatory detention without due process." *Id*. at 735.

The same reasoning applies here. Singh has been in the United States for more than three years. (Doc. # 1 ¶ 30). After being initially detained at the border he was

released into the country years prior to his present detention. (*Id.* ¶ 29). Indeed, on both of the Notices to Appear he received, he was designated "an alien present in the United States who has not been admitted or paroled." (Docs. # 1-1 and 1-3 at 4).

What's more, the Court does not accept Federal Respondents' contention that Singh was detained under the auspices of 8 U.S.C. § 1225(b)(1) on the basis of the Notice and Order of Expedited Removal. (Doc. # 3). To start, Singh received two Notices to Appear after receiving the Notice of Expedited Removal, including a Notice to Appear in July 2026 that clearly did not designate him as an "arriving alien" such that § 1225 would apply. (See Doc. # 1-3 at 4). If the Government had intended for § 1225 to be the applicable provision, surely it would have gone to greater lengths to make that clear. Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Singh's detention.

**B. Due Process**

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Singh, the Court must now determine whether his present detention violates his due process rights. The Sixth Circuit has concluded that petitioners like Singh have "passed through our gates" which affords them protection by the Fifth Amendment's Due Process Clause. *See Lopez-Campos*, 175 F.4th at 733.

The Court recognizes that Singh was given a bond hearing in July 2026. However, according to Singh, the IJ placed the burden of proof on Singh, as opposed to the government. (Doc. # 9 at 8–9). Federal Respondents do not contest Singh's assertion. And while this Court is barred by § 1226(e) from reviewing discretionary decisions of IJs, the Court may review the procedures of the bond hearings to evaluate whether they were

constitutionally adequate. As such, the Court finds it necessary to evaluate whether due process requires Singh receive a second bond hearing.

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Singh has a cognizable liberty interest in avoiding detention. *See Lopez-Campos*, 175 F.4th at 734 (a person's liberty interest in being free from detention "is the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (6th Cir. 2004) (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992*); see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Singh's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Singh is not afforded a detention hearing. *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). To date, Singh has not had a detention hearing at which his eligibility for bond was determined under the appropriate constitutional guidelines. Thus, his present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second *Mathews* factor favors Singh.

As to the third factor, the Federal Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at

length about above, "serve the governmental interest in public safety." *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sept. 19, 2025) (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Singh.

Singh claims that immediate release is the most appropriate remedy in this case. (Doc. # 1 at 22). This Court agrees with Petitioner that his Fifth Amendment due process rights were violated when he was detained for more than a year without access to an appropriate individualized hearing. However, the Court disagrees that immediate release is the proper remedy. Rather, this Court agrees with other district courts in the country which have concluded that the proper remedy to this violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater

than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1) Singh's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2) Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3) Respondents shall file a Status Report with this Court **on or before September 11, 2026** to certify compliance with this Order. The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 28th day of August, 2026.

**Signed By:**
***David L. Bunning*** DB
**Chief United States District Judge**

G:Judge-DLB\DATA\ORDERS\Cov2026\26-311 MOO re Habeas Petition.docx